Thank you. May it please the Court. My name is Linda Bell. I'm an Assistant Federal Public Defender in the District of Nevada, and I represent Jeremy Womack. I would like to reserve two minutes of time for rebuttal, and I will keep my eye on the clock. This case is about the failure of counsel to properly advise Mr. Womack of the consequences of his plea, which resulted in Mr. Womack pleading guilty and being sentenced to eight sentences of life without the possibility of parole. Mr. Womack was entitled to effective assistance of counsel during the plea negotiations. However, his counsel provided deficient performance, which resulted in prejudice to Mr. Womack, because had his counsel given him proper advice, Mr. Womack would have chosen to go to trial rather than enter the plea of guilty that he did. Counsel, I don't see anywhere in the record a motion asking for an evidentiary hearing at the district court level to explore this ineffective assistance of counsel claim. Is there something in there that I didn't see? Your Honor, I'm sorry. In which district court, the State or the Federal District Court? In other words, was a motion made to the District Court to have an evidentiary hearing to flesh out the record on this alleged ineffective assistance of counsel? In Nevada, the District Court is the State trial court. Okay. In the State trial court. In the State trial court? At any level, at the trial level, was there a motion requesting an evidentiary hearing to flesh out the alleged ineffective assistance of counsel? My recollection is that when Mr. Womack filed his State court petition, he did request counsel. I'm not certain if he specifically also requested a hearing, but I would be happy to provide supplemental briefing to the Court on that point. Okay. I guess my point is, again, we have to look at what's in the record. And there's precious little in here of an evidentiary nature that deals with the alleged ineffective assistance of counsel, which is one of the gravamen of your complaint here. That's true, Your Honor. When Mr. Womack filed, and he filed a rather extensive petition with the State court at some hundred pages or something, and the State court summarily dismissed his claim, did not provide him with counsel, did not provide him with any opportunity to hear his case. And, in fact, Mr. Womack asked to be present in court for the hearing, which was not an evidentiary hearing, but just a court hearing. He did request to be present, but by the time that he made the request to be present, his petition had already been denied, and then he filed a request for rehearing that was then characterized as a second petition. So he was very actively trying to get these issues forward to the State court, but the State court really didn't give him any attention whatsoever, and there was no hearing held by the State court, even though Mr. Womack did raise these issues about his counsel's deficient performance, and he did provide an affidavit explaining what had occurred between him and his counsel as an exhibit to his petition. And in that affidavit, Mr. Womack explains that he was under a lot of duress at the time. He was very anxious about being in the jail. Remember, Mr. Womack was a very young man at the time. He was 23 years old. He had been in jail for about four months, and he was so anxious, he called his lawyer and said, I want to take a deal, and his lawyer brought him a plea agreement. They brought him to court, and then he changed his mind. He said, no, you know, I can't admit to these. I didn't do these things, and then the lawyer came back to him and said, well, how about if you do an Alford plea? And so they bring Mr. Womack back to court, and when they bring him back to court, he goes along with the deal. In his appeal to the Nevada Supreme Court, he explains that when the judge is doing the plea canvas and the judge is telling him this massive sentence that he could receive, his lawyer tells him that don't worry about it, it's going to be okay. The judge is only telling him the possibility of the enhancement, but the court was not going to impose such harsh sentencing. That's in Mr. Womack's appeal in the record at page 253. But under our Garcia case, though, doesn't that deal with the issue of the prognostications of counsel, if they're erroneous, and if the defendant was advised of the parameters of the possible sentence? Doesn't that dispose of your argument here? No, Your Honor. Erroneous is one thing, but a gross mischaracterization is another. And who made that? His attorney. Okay. But at the time your client was sentenced, he signed a written plea agreement, which specifically stated that the State retained the right to argue for a sentence of life without parole. At the guilty plea hearing, the State court judge also informed him that he could be adjudicated and sentenced as a habitual criminal and that he could be sentenced to life without parole on each count. So both what he signed and what he was told by the court somewhat belie your client's suggestion that he didn't know. Isn't that accurate to state? Your Honor, this Court in Christie has said that the fact that he assured the Court that no one made any promises is not conclusive when we're looking at this question. Mr. Womack relied on what his lawyer told him. But that's not entirely – I don't think that's entirely a fair response to Judge Smith's question. During the plea colloquy, the Court repeatedly told Mr. Womack, you understand you get life without the possibility of parole. Do you understand that? And he answers each time, yes, I understand that. Now, even if his counsel is saying, as a matter of discretion, the judge may not give you that, and this is my best advice, you can't get around the fact that your client knows from the judge at the time of sentencing that he may get life without parole. He's been warned of that repeatedly. And what Mr. Womack explains in his appeal to the Nevada Supreme Court is that while that was going on, his lawyer was telling him, don't worry about it. The judge is just giving you the parameters. Mr. Womack is going through this process thinking this is the way he's going to guarantee himself a sentence that will allow him to get out of prison in his lifetime. Otherwise, why would he accept this negotiation that exposes him to what he got, which was eight consecutive life sentences without the possibility of parole? He could have easily gotten a better result by going to trial and by challenging some of the evidence in this case. It just doesn't make sense that he would plead guilty if he had a full understanding of what he was exposing himself to if he was not relying very heavily on his attorney's urging that this was how he was going to get a 30- or 40-year parole eligibility in this case. But the reality is, counsel, this is a habeas petition. You know the law we're bound by. You know we have to follow Strickland. You know that we have to depend on what the Supreme Court has told us. And the Supreme Court has been pretty clear about this, as is our own case law, about the issue of what counsel allegedly said that might be erroneous. I mean, no defense counsel can always prognosticate accurately. They do the best they can. But the standard here is one of whether your client can show prejudice but for the action of this counsel. And the fact is, the record shows that he signed things, was told repeatedly that this could happen. And I'd be interested if you have some authority you can point to that suggests that we have the ability to change the law, if you will, on this issue. I don't see where your client was poorly treated by this lawyer under our case law. Well, Your Honor, I do believe there's case laws such as IEA that says if there is a But that's a distinguishable case, isn't it? In that case, there were a number of things that the counsel did that were pretty clearly wrong. In this case, you've got a single allegation about what the sentence was going to be that is somewhat belied by what is clearly in the record. I think IEA is not really going to help you very much. Do you have any other authority than IEA? Your Honor, just that line of cases that says that if there's a gross mischaracterization, then that can render the plea invalid. And if I may reserve my last 30 seconds for rebuttal, thank you. May it please the Court, counsel. My name is Robert Whelan. I'm a senior deputy attorney general employed by the Office of the Attorney General of the State of Nevada. Initially, I would like to direct this Court's attention to excerpt of the record 303. Counsel referenced the affidavit or the comments by Mr. Womack at the time he filed his State habeas petition. Even though I asked for and wanted the deal, he prefaces the paragraph, it's my attorney's job to represent me, my best interests and not my wants or desires. Well, you know, he asked for and wanted the deal. He was advised, as has been pointed out repeatedly, of the possibilities that were facing him. And what counsel was faced with, defense counsel was faced with in this circumstance were extraordinarily heinous crimes committed against three children. And on top of that, there was the burglary, there was the forgery. And following his arrest, he solicited a murder while he was in jail. And the evidence against all of those crimes was overwhelming. The solicitation was videotaped. So that left counsel with, okay, I can go to trial on everything, in which case, even if there were, say, a severance of the forgery or something like that, there's overwhelming evidence. And any jury that I'm aware of, based on the facts presented in the grand jury testimony, is going to be astonished at the cruelty that this person committed against these children. They're going to be astonished. They're going to hate him. Was there a possibility of the death penalty in this case, counsel? No, but it's the kind of circumstance that a jury is going to go out afterwards and probably ask their representatives to have the death penalty imposed for this sort of thing. But in effect, what this man got in terms of the sentence was about what he could have gotten had he been tried. No, I disagree with that, Your Honor. If you compare the sentence structure with what he could have gotten, he pled guilty attempted murder with the use of a deadly weapon on count one. Had he gone to trial, the possible penalties on that were life without the possibility of parole. Those could have been run consecutive. What happened was is when he entered his guilty plea, the judge sentenced him as a habitual criminal on that count. And that was a life without the possibility of parole. Now, what the judge also did on count two, which was first-degree kidnapping with the use of a deadly weapon, he ran that concurrent with count one. So even though there are two life without the possibility of parole sentences there, one of those is running concurrent with the sentence in count one. On count three, attempted murder with the use of a deadly weapon. Again, the defendant was adjudicated a habitual criminal. He got life without. On count four, first-degree kidnapping with the use of a deadly weapon. That was run concurrently with count three. The defendant was, again, given life without the possibility of parole, and that was run. And, of course, because of the use of a deadly weapon, that was consecutive. Count five, again, first-degree kidnapping. He was adjudicated a habitual criminal. That was life without the parole. He was adjudicated a habitual criminal on the forgery and sentenced to life without the possibility of parole. So look at the ---- But in reality, then, it's like Patrick Henry. He's only got one life to give, and he's sentenced over and over and over again to the same thing. So is it not correct? Isn't it correct, then, what counsel suggested, that what he got is as bad as a practical matter as what he would have gotten had a jury convicted him on all counts? I disagree with that, Your Honor, because there's always ---- Point to me the differences. What would have been different? Okay. He could have gotten two consecutive life withouts. And bear with me a minute, if you would, please, Your Honor. Okay. He could have gotten ---- well, he did get consecutive life withouts on count two. He could have gotten two instead of one life withouts on count three. And so instead of having eight running wild, he's got six. And that's just on the plea. Now, of course, there are other six. But how many life withouts do you have to get before you stay in jail for the rest of your life? Well, the point being is this, is that the law can change and he has the possibility of getting out. What counsel, what their allegation is ---- Might have been in Los Angeles County. Well, Nevada's recently ---- The point is this, is the allegation is counsel, you know, somehow violated his duty because he says, this is your best chance for leniency. Okay? And it was his best chance for leniency because, as I pointed out, if he'd gone to trial, the evidence against him would have been overwhelming. So what? And he likely would have been convicted on everything under the sun that the DA had brought and was thinking about bringing against him. Now, in this case, what counsel did is said, okay, plead guilty. It won't be as many charges. It won't be everything under the sun. Yes, there is a risk. All right? But the one thing that you have left to give to these kids, even though you slit two of their throats and you scared the girl so bad that she jumped out of a second-story window balcony to get away from this guy and then came back and tried to save her brothers, did save her brothers, but the thing that the only thing he had left to offer for leniency is the guilty plea, saying I'm sorry. They presented a doctor who said to a reasonable medical certainty, this guy can be rehabilitated. They did everything that they could to put this fellow in the best light possible for the judge. And it was his best chance. He would have had, if he'd gone to trial, he wouldn't have been able to make the argument, well, at least I saved the kids the additional traumatic experience of going to trial. Thoughtful of him. In these circumstances, it is thoughtful of him. It's the best that he has to offer. If you look at the charges that were dismissed, there's a net savings of sentences. There is the possibility that the statute can change with respect to the life without the possibility of parole. His sentence structure is not all these sentences running wild. He got six instead of eight. You might say, well, what more is there? There is the possibility, as I said, that the statutes, you know, may someday change. There are pressures on prisons these days to reduce populations. But it was not a guarantee made by counsel. They don't contend that there was any guarantee. It was, what can we do to give you the best shot at leniency? And the best shot he has was life with. That was his best shot for a term of years under the possible sentences. And his counsel asked, said, well, he's 23. And, of course, counsel is also dealing with a guy that's got four prior felonies. So counsel is between a rock and a hard spot in the first instance. And so his best chance, there not being any guarantees, he was made aware of that by everybody under the sun. The record substantiates that. It was his best chance. And they did the best that they could. As I said, counsel at sentencing made arguments, presented evidence that he was, he could be rehabilitated. The judge just didn't buy it. That doesn't mean that counsel is ineffective. And that doesn't mean under 2254D that the Nevada Supreme Court's resolution of the matter was objectively unreasonable. Thank you. Thank you, Mr. Wheeler. Ms. Bell? Just one quick point. As the court pointed out, you can't do more than one life without the possibility of parole. Mr. Romack received six. He is not eligible for a pardon under Nevada law. So he will actually serve the life without any possibility that the law will change, I think is completely unrealistic, that it would change retroactively and affect his sentence. I would ask the court to consider granting Mr. Romack relief. Thank you. Thank you. The case of Romack v. Del Papa is submitted. And the final case on the calendar for today is NREA XL Innovations. I can't remember. Did you say that they all submitted cases versus our submitting? Yeah. Okay.
judges: Goodwin, Bybee, M. Smith